IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

EDDIE S. WATKINS                                                    PLAINTIFF

          v.                    Civil No.   6:10-cv-06092

SHERIFF RYAN BURRIS, Hot
Spring County, Arkansas; JAILER
LINDA ROWE, Hot Spring County
Detention Center (HSCDC); DEPUTY
CALHOUN, HSCDC; CHIEF JAILER
MARTY HALL, HSCDC; and DR. D.
ELKIN, HSCDC                                                        DEFENDANTS

**<u>MEMORANDUM OPINION</u>**

          This is a civil rights case filed by the Plaintiff, Eddie S. Watkins (Watkins), pursuant to 42

U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*  The case is before me pursuant to the

consent of the parties (Doc. 16).

          Watkins is currently incarcerated in the Ouachita River Unit of the Arkansas Department of

Correction (ADC).  The events that are the subject of this action occurred when Watkins was

incarcerated at the Hot Spring County Detention Center (HSCDC).  Specifically, Watkins maintains

he was denied adequate medical care and that his legal mail was opened outside his presence.

          Defendants filed a summary judgment motion (Doc. 18).  Plaintiff has responded (Docs. 22-

25).  The motion is now ready for decision.

## **1.  Background**

          According to Watkins, in December of 2009, he was incarcerated at the HSCDC.  He

maintains he was released on a signature bond later that month because of his medical condition and

his need for medication.  *Plaintiff's Exhibit* (hereinafter *Plff's Ex.*) G.  The document Watkins has

provided contains no mention of the release being due to his medical condition.  *Id.*

-1-

The period of incarceration involved in this case began when Watkins was booked into the HSCDC on August 24, 2010.  He remained incarcerated there until January 2011.  *Defendants' Exhibit* (hereinafter *Defts'* Ex) D.  When he was booked in, he stated he was on various medications for epilepsy, diabetes, and high blood pressure.  According to Watkins, Jailer Rowe advised him that the jail would not be providing him with any medication because the medical conditions were pre-existing.

Watkins maintains he suffered from twenty-three to twenty-four mild seizures.  Because of the seizures, Watkins asserts the he injured himself on two separate occasions resulting in permanent scarring.[1]

Nurse Practitioner (NP) Elkin provided medical care to inmates at the detention center. *Defts' Ex.* E at ¶ 3.  According to NP Elkin, the policy of the HSCDC is to provide any inmate with "his current regime of medications."  *Id.* at ¶ 6.  NP Elkin asserts that

> [a]ny medications that have been filled by an inmate in the past thirty (30) days prior to his incarceration are provided to that inmate without regard to cost.  Upon booking, inmates are asked to provide the jail staff with a current list of medications that they have been taking in the past thirty (30) days.  Inmates are also asked to provide the name of the pharmacy that they have been using to get their medications filled.  The medication list is then confirmed with the pharmacy and the medications are ordered and delivered.

*Id.* at ¶¶ 7-8.  Watkins indicated he was "never issued" the form asking him to list his current medications and current pharmacy.  *Plff's Ex.* Z.

Over the course of Watkins' incarceration there, NP Elkin indicates he saw Watkins fifteen different times.  *Defts' Ex.* E at ¶ 21.  According to NP Elkin, Watkins always appeared to be in good physical health and his blood pressure and sugar levels were monitored and were always in the

---

[1]Watkins submitted pictures that he asserts show the scarring as a result of these falls.  *Plff's Ex.* Q.  The pictures are so dark that none of the alleged scarring can be seen.

normal range. *Id. at* ¶¶ 22-23.  After September 7, 2010, NP Elkin states "Watkins did not mention to me any further concerns about the medications he now complains of not receiving." *Id.* at ¶ 24.

Both NP Elkin and Jailer Rowe indicate they made numerous attempts to confirm Watkins' prescription medication information. *Defts' Exs.* D & E.  Jailer Rowe maintains she contacted: Watkins's Mother several times asking for her to bring Watkins' empty pill bottles in; the Malvern Emergency Room but the records were over a year old; and the Arkansas Department of Correction but the records were also over a year old. *Defts' Ex.* D.

NP Elkin asserts that Watkins identified the Wal-Mart pharmacy, the USA Pharmacy, Walgreens, and Fred's Pharmacy all in Malvern as places he had his prescriptions filled. *Defts' Ex.* E at ¶¶ 11-14.  The only prescriptions filled at any of these pharmacies were Lisinopril, a high blood pressure medication, Xanax, used to treat anxiety and panic disorders, and Hydrocodone, a narcotic pain medication, in April of 2010.

NP Elkin also checked with the ADC, Dr. Carlos Rivas, who Watkins identified as his primary care physician, and the Malvern Emergency Room. *Id.* at ¶¶ 16-18.  These records were respectively dated 2009 and 2007 and 2009. *Id.*  NP Elkin asserts that he was never able to confirm that Watkins was taking any of the medications he listed when booked. *Id.* at ¶ 19.  According to Jailer Rowe, Watkins "could never produce any evidence that he was currently taking the medications he claimed he needed." *Defts' Ex.* D at ¶ 11.  *See also Defts' Ex.* E at ¶ 10.  Elkin states that "[w]ithout proper verification of any actual diagnosis or of taking certain medications within thirty (30) days prior to his arrival, it would have been unsafe and unethical for me to just start him on these medications." *Id.* at ¶ 20.

Defendants also assert that Watkins never mentioned any seizures in either his medical

requests or his grievances. *Defts' Ex.* A.  Further, NP Elkin asserts that Watkins "never reported any of these alleged seizures to me." *Defts' Ex.* E at ¶ 27.

Watkins has submitted an exhibit that shows as of November 2009 he was prescribed: Enalapril used to treat high blood pressure, Glyburide, used to treat diabetes, Dilantin®, brand name for phenytoin, used to treat seizures,  Tegretol®, brand name for carbamazepine, used to control seizures,  Baclofen, used to treat muscle spasms, and a multi-vitamin. *Plff's Ex.* B.  Watkins has submitted, among other things, these additional records: a February of 2007 record from Dr. Rivas showing Watkins had been diagnosed with epilepsy--*Plff's Ex.* B; a June of 2009 record from the Federal Bureau of Prisons which, among other things, notes Watkins has "severe epilepsy and seizure disorder--*Plff's Ex.* D.

Watkins did beginning with his first grievances dated August 24th state that he was taking seizure, diabetes and high blood pressure medication and was a "diabetic, seizure patient." *Defts' Ex.* A at pgs. 1-2.   And, on August 28th, Jailer Rowe indicates she had obtained his list of medications from the ADC for September of 2009.  *Id.* at pg. 3.  She states the doctor, who would be there on August 30th, and would be provided the list.  *Id.*

On August 29th, Watkins stated he was still without his medication and was coughing up blood. *Defts' Ex.* A at pg. 4.  The medical request dated September 3rd is basically illegible.  *Id.* at pg. 5.  However, Watkins does mention on it that he was still coughing up blood.  *Id.*  In response, he is told the Sheriff has been contacted and he would see that Watkins got to the emergency room. *Id.*  On September 6th, Watkins submitted another request in which he stated he had not been taken to the emergency room and had been having chest pain for five days and was throwing up blood." *Id.* at pg. 6.  In response, Jailer Rowe stated she had done everything in her power to assist him but

-4-

didn't know what more she could do.  *Id.*  On September 11th, Watkins submitted a request asking for medical attention.  *Plff's Ex.* C-7.  He stated he had experienced three mild seizures, was coughing up blood, and was still without his medication.  *Id.*  There are no medication logs or medical ledger sheets in Watkins' jail file for the months of August and September of 2010.  *Plff's Ex.* H.

On October 7th, Watkins submitted a request to be seen by the doctor as soon as possible. *Plff's Ex.* C-8.  He stated he still had not been receiving his medications.  *Id.*  On October 8th, Watkins submitted a grievance stating that he had been seen by the doctor on the 7th and prescribed Ibuprofen.  *Plff's Ex.* C-9.  Further, he states the doctor told him that medication had been prescribed for him last month.  *Id.*  Jailer Rowe responded that she was not aware of any medication being ordered for him.  *Id.*  If medication had been prescribed, she stated it would have been taken to the pharmacy and filled.  *Id.*

On a request dated November 1st, Plaintiff asked is his medication for sinus congestion and his seizure medications, Dilantin and Tegritol had been ordered from the pharmacy.  *Plff's Ex.* O. In response, he was told the medication was received that day.  *Id.*

In the remaining medical requests submitted to the Court, Watkins mentions a bad head cold, sinus infection, and a swollen or infected left eye in requests dated 10/27, 11/14, 11/20, 11/28, 12/9, 12/16, a cold in a request dated 1/11, and his eyes being badly infected in a request dated 1/13. *Defts' Ex.* A.  Watkins agrees that he was seen by NP Elkin but asserts he saw him no more than five or six times.  He also asserts that he spoke with NP Elkin about his seizures.

The medication logs dated from October 8th to January 18th indicate Watkins received the following:

| 10/8 to 10/31 | Ibuprofen |
| 11/1 to 11/15 | Ibuprofen & Methylprednisolone (a corticosteroid) |
| 11/16 to 11/24 | Ibuprofen |
| 11/24 to 11/29 | Ibuprofen & Mupirocin Cream (an antibiotic) |
| 11/30 to 12/13 | Ibuprofen, Mupirocin, Loratadine (allergies), Amoxicillin (an antibiotic), and eye drops |
| 12/14 to 12/27 | Ibuprofen, Gentamicin (antibiotic used to treat eye infections), Amoxicillin, and Prednisone (an anabolic steroid) |
| 1/11 to 1/18 | Ibuprofen and Prednisone |
| 1/15/ to 1/18 | Gentamicin |

*Plff's Ex.* T.

An undated memo from Jailer Rowe to "ADC medical" indicates "Dr. Elkin [had] issued a request for <u>immediate</u> transport [of Watkins] due to medical." *Plff's Ex.* X. No further information regarding this request is contained in the summary judgment record.

On November 30, 2010, Watkins maintains Jailer Rowe opened his legal mail outside of his presence. According to Watkins, the letter was from his "old" attorney and had written on it the words "legal mail." *Defts' Ex.* C. Although Watkins asserts this happened on two other occasions, he does not indicate when these incidents occurred or what mail was involved. *Defts' Ex.* F. He also believes Jailer Rowe intercepted notice that this civil rights case had been filed. *Id.*

Jailer Rowe states she opened the mail on November 30th, despite it being marked legal mail, because the envelope was handwritten and did not have a letterhead for the return address. *Defts' Exs.* C & D. She also could see that the letter contained lined notebook paper. *Id.* In her

"experience, if a letter actually comes from an attorney or the courts, it has a printed return address on the envelope with some type of letterhead." *Defts' Ex.* D at ¶ 17.

### 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

First, Defendants argue that any official capacity claims fail because the complaint is completely devoid of any alleged custom or policy of Hot Spring County which resulted in a violation of his constitutional rights. Second, despite Watkins' attempt to make it appear as if he were desperately trying to get his medication for various infirmities, Defendants maintain there is

no evidence of deliberate indifference on their part.  With respect to the non-medical Defendants, they assert there was absolutely no reason to believe NP Elkin was not providing Watkins with adequate medical care.  Additionally, they maintain there is no evidence showing that Watkins suffered any detrimental effect to his health as the result of any alleged denial of medical care. Finally, Defendants maintain the single time Jailer Rowe opened Watkins' legal mail does not rise to the level of a constitutional violation.  With respect to the other alleged instances of interference with his legal mail, Defendants state Plaintiff cannot provide the dates of these occurrence, describe what letters were allegedly interfered with, or provide any other information.

**(A).  Denial of Medical Care**

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). "It is well established that deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010)(internal quotation marks and citation omitted). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle  v.  Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component:  'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

With respect to NP Elkin and Jailer Rowe, I believe there are genuine issues of fact as to whether or not they exhibited deliberate indifference to Watkins serious medical needs. Clearly, the two of them attempted to verify Watkins's current prescription medications. However, they did not appear to take any steps to obtain a current evaluation of his medical condition to determine whether in fact he had epilepsy, diabetes, or high blood pressure. Nor does it appear they checked their own records from Waktins' recent incarceration at the HSCDC. As Watkins pointed out this was not the first time he had been incarcerated at the HSCDC. In December of 2009, Watkins asserts he was let out of jail on a signature bond because of his medical condition. Watkins also submitted a memorandum indicating NP Elkin had requested immediate transfer of Watkins to the ADC because of his medical condition.

With respect to the alleged fifteen times NP Elkin asserts he saw Watkins, no medical chart or notes of any type were submitted. No dates are mentioned, there is nothing to indicate the purpose of the fifteen visits, and nothing to suggest the diagnoses and treatment for each visit. Additionally, while they maintain they were not aware of Watkins having any seizures, he reported being on seizure medication and having experienced mild seizures. *Plff's Ex.* C-7. He also, contrary to Defendants' assertions, continued to ask for his seizure medication as late as November 1st. *Plff's Ex.* O.

With respect to Sheriff Burris, Deputy Calhoun, and Chief Jailer Marty Hall, there is nothing before the Court that suggests the these individuals were personally responsible for, or involved in, making any decisions regarding Watkins' medical care or that they interfered with his medical care.

-9-

*Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2008)(to establish deliberate indifference, inmate must show he suffered from objectively serious medical need that each defendant knew of but ignored); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983).  They are entitled to summary judgment on this claim.

 "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).   In other words, the official capacity claims are treated as claims against Hot Spring County itself.  *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

To establish Hot Spring County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).  The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. Seymour v. City of Des Moines, 519 F.3d 790, 800 (8th Cir.2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. Speer v. City of Wynne, 276 F.3d 980 (8th Cir.2002); Parrish v. Luckie, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. Szabla v. City of Brooklyn Park, 486 F.3d 385, 389-90 (8th Cir.2007).

*Id*. at 817-18.

"To establish the existence of a policy, [Watkins] must point to a deliberate choice of a

guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009). He "must also show that the policy was unconstitutional and that it was the moving force behind the harm that he suffered." *Id.* (internal quotation marks and citation omitted). Watkins has made no such showing. Therefore, there is no basis on which Defendants can be held liable on the official capacity claims.

**(B).  Interference with Legal Mail**

Inmates have a First Amendment right of free speech to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977). Restrictions on this First Amendment right are valid "only if [they are] reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). "[E]conomic factors may . . . be considered . . . in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." *Bell-Bey v. Williams*, 87 F.3d 832, 838 (8th Cir. 1996)(*citing Bounds v. Smith*, 430 U.S. 817, 824-25 (1977)).

An isolated instance of opening confidential legal mail, without any evidence of improper motive, does not support a § 1983 claim. *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997). Here, Watkins has not suggested there was any ongoing practice of censorship or that the application of any policy resulted in the alleged interference. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)(Plaintiff must show regular and unjustifiable interference--an isolated incident of mail tampering is usually insufficient to establish a constitutional violation). This is insufficient.

-11-

### 4.  Conclusion

For the reasons stated, Defendants' motion for summary (Doc. 18) judgment will be granted in part and denied in part by a separate order entered this same day.

DATED this 28th day of August 2012.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE